Frank ARDINE, Plaintiff,

v.

**KORNDOERFER CONSTRUCTION CO., Inc., Defendant.**

Civ. No. 156–1969.

District Court, Virgin Islands, D. St. Croix.

Dec. 1, 1969.

Brown & Bryant, Christiansted, V. I., for plaintiff, Britain H. Bryant, Christiansted, V. I., of counsel.

Young, Isherwood, Gibbs & Carney, Christiansted, V. I., for defendant, Robert M. Carney, Christiansted, V. I. of counsel.

## MEMORANDUM OPINION

CHRISTIAN, District Judge.

Plaintiff, Frank Ardine brought an action for breach of contract, naming as defendants C. W. Korndoerfer, d/b/a Korndoerfer Construction Company, Inc., and Gerald Fehlberg.

By motion filed by defendants Korndoerfer and Fehlberg, this Court dismissed the complaint as to those individuals by order dated the 7th day of December, 1968, leaving as the sole defendant in the suit Korndoerfer Construction Co., Inc.

Plaintiff bases his suit on an alleged written contract dated January 13, 1968, by the terms of which plaintiff alleges that he agreed to furnish all plumbing labor required by defendant in the construction of a hotel on Protestant Cay in the harbor of Christiansted, St. Croix, Virgin Islands. Plaintiff asserts that, under the terms of the contract, he was to be paid the sum of Sixteen Thousand ($16,000) Dollars in weekly draws of Three Hundred Fifty ($350) Dollars. Under plaintiff's alleged agreement, plaintiff, in the event he completed the work before he had been paid the sum of $16,000, would receive the difference required to bring his total payments up to his alleged contract price of $16,000. The document, on which plaintiff relies, contained a provision reciting that it was subject to cancellation by "purchaser" upon payment to plaintiff of twenty-five (25%) percent of the contract price. Under this aspect of plaintiff's case, he asks judgment in the amount of Four Thousand ($4,000) Dollars.

It is the further claim of plaintiff that, by reason of the breach of the alleged contract by defendant, he suffered an additional loss of Five Thousand ($5,000) Dollars by reason of the fact that he was obliged to decline other jobs in order to fulfil his obligations to defendant, and that the jobs so declined would have netted him a profit of Five Thousand ($5,000) Dollars.

As a third item of damage, plaintiff prays judgment for Three Thousand ($3,000) Dollars, representing compensatory damages for services rendered, an expense incurred by him in the purchase of a boat and for the use of his plumbing license.

Defendant insists that it entered into no written contract with plaintiff, but rather that plaintiff undertook the work mentioned in his complaint on a verbal understanding that, on a week-by-week basis, defendant would pay plaintiff Three Hundred Fifty ($350) Dollars for labor and supervision of all plumbing required, with no additional compensation to plaintiff, regardless of the total sum paid plaintiff by the time the work was completed. Defendant alleges that plaintiff performed the work in a faulty and unworkmanlike manner, making it necessary for defendant to terminate plaintiff's services when only a small fraction of the total plumbing had been completed. Moreover, defendant counterclaims for damages against plaintiff in the amount of Three Thousand ($3,000) Dollars, representing sums expended by defendant to correct defective work done by plaintiff and as compensation for time lost on the job by reason of the absence of plaintiff and his crew from the project for a period of about ten days.

At the outset, the Court is called upon to determine whether plaintiff undertook the work by virtue of a valid written agreement, or whether, as defendant alleges, no such contract existed. Plaintiff's exhibit No. 1, the document alleged to constitute a contract, is a printed form customarily used by plaintiff. It recites that the total cost of the work is $16,000. However, in the portion dealing with payment which, as prepared, reads, " * * * Payments or draws shall be at a rate of $350.00 per week until hotel is completed or the $16,000 figure has been reached. * * *", the words " * * * or the $16,000 figure has been reached * * *" were lined out and the initials of the signatories of that document placed next to the deleted portion. The document was signed by plaintiff on his own behalf and by one Gerald L. Fehlberg as superintendent of the defendant company. Mr. Fehlberg testified that he lined out the portion of the agreement mentioned above, as he was certain that the agreement as originally prepared would have been unacceptable to his principals. He testified that he told plaintiff that, while he would sign the instrument as plaintiff requested, he wanted plaintiff to understand that the contract would not be effective unless and until it was approved by his home office to which he was bound to forward it. Plaintiff admits that Fehlberg so stated. Moreover, this condition of defendant is buttressed by other exhibits offered in evidence, namely defendant's exhibits A, B, and C.

Defendant's exhibit A was a proposed agreement in letter form sent by defendant to plaintiff after it had received a copy of the agreement submitted for its approval by Fehlberg. That document is dated January 16, 1968. Defendant's exhibit B dated January 23, 1968 is plaintiff's response to the company, commenting on exhibit A. In that letter (exhibit B), plaintiff stated, "Enclosed is the contract you have offered me for the Hotel on the Cay. * * *" That document was not signed by plaintiff, but instead he tendered a revised version, saying, " * * * I had no choice but to revise your contract so that I could sign it * * *." Plaintiff also went on to state, " * * * I believe it is now a good contract and will enable both of us to do a good job and make a fair profit." This revised draft was unacceptable to defendant. It was then agreed that plaintiff would continue the work until such time as some of the officers of the defendant corporation could come to the Virgin Islands and confer with him in order to arrive at a mutually acceptable contract.

Plaintiff admits that, when the superintendent of the defendant company lined out the portion of his initial draft, as mentioned above, he understood by

this that he would be entitled to no more money at the completion of the job than the total sum paid to him up to and including that date. Plaintiff further admitted in his testimony that, when he wrote his letter of January 23, 1968 (defendant's exhibit B), he was not then of the impression that a valid contract existed between himself and defendant. Plaintiff made an additional admission, that he did, in fact, meet with the officers of the defendant corporation in an attempt to hammer out a satisfactory contract, and that no such written agreement resulted from the conference. He also admitted that he thereafter continued to work on a verbal arrangement as alleged by defendant.

■ On this evidence, therefore, the Court finds that the parties failed to reduce their agreement to writing, and that no valid contract exists or ever existed, upon which plaintiff may sue. I find also that the plaintiff agreed to render the services in question to defendant, on an oral understanding that, for each week he furnished the plumbing labor and plumbing supervision, he would be paid Three Hundred Fifty ($350.00) Dollars, with no additional compensation due him, regardless of how soon he completed the job.

■ With respect to plaintiff's claim of damage in the sum of Five Thousand ($5,000.00) Dollars, representing his loss of profits from other jobs, plaintiff called but one witness, a Mr. Ralph McDonald, a general building contractor. Mr. McDonald testified that, some time during the month of February 1968, he had a conversation with plaintiff, in which he asked plaintiff if he were interested in doing some general plumbing for his construction company on a permanent basis, to which plaintiff replied in the negative, stating that he was at that time tied up on another job. Because of this response, the witness testified, no terms of employment were discussed, as the matter ended on plaintiff's reply. This witness further testi-

fied that, starting some time around the middle of May 1968, and continuing for the remainder of that year, he, from time to time, engaged the services of plaintiff as a plumber on a sub-contract basis, and that, as of January 1, 1969, he hired plaintiff as his full-time plumber, paying him Three Hundred sixty ($360.00) Dollars per week, plus living quarters and meals. The witness declined to say, despite much prompting, that the job, which plaintiff commenced on January 1, 1969, was the same job which he had in mind when he spoke to plaintiff in February 1968. It should be noted that plaintiff's employment with defendant terminated either late February or early March of 1968, and that, when he became available, this witness did not then offer him permanent employment, although he admits that, at that time, he had no plumber working for his construction firm on a permanent basis. I find, therefore, that the plaintiff has failed to show that he suffered any loss of earnings or profit by reason of his having undertaken the job of defendant.

■ As a part of his general claim for compensatory damages in the amount of Three Thousand ($3,000.00) Dollars, plaintiff insists that by reason of his undertaking the job of defendant, it was necessary for him to purchase a boat to transport his men and tools from the mainland of St. Croix to Protestant Cay. Plaintiff claims that, as a result of this, he expended the sum of Three Hundred Seventy-Five ($375.00) Dollars for a boat and motor, which were of no further use to him when he was dismissed by defendant, and which boat and motor he claims, were subsequently stolen. On the evidence before the Court, it is clear that there was no need for plaintiff to incur this expense, as defendant owned and operated a boat which transported heavy equipment from the mainland to the Cay, and which could just as easily have transported plaintiff's men and tools as it did his

trucks. Moreover, plaintiff admits that defendant agreed to provide, and did, in fact, provide, living quarters for his employees as well as a building for the storage of their tools and equipment, I find, therefore, that the expenditure of Three Hundred Seventy-Five ($375.00) Dollars by plaintiff for a boat and motor was not in furtherance of, or necessitated by, his employment by defendant.

■ Plaintiff's claim of damages suffered by reason of the use of his plumbing license by defendant is groundless. The evidence in the case, that a plumbing permit for the Hotel-on-the-Cay job was issued to Korndoerfer Construction Co., Inc., and that this permit recited that the plumber would be Frank Ardine, the holder of plumbing license No. C 595–67. The Building Permit Inspector of the Department of Public Works, who was called by plaintiff as a witness, testified that the issuance of the permit to the builder meant no more than that the Department of Public Works had examined and approved the plumbing plans which the builder had submitted. While it is true, as the witness testified, that, at the time defendant changed plumbers, it should have applied for and obtained a change order, which admittedly was not done, this merely means that the plumbers who completed the job for defendant, plumbers sent down by the home office in Racine, Wisconsin, violated the licensing law of the Virgin Islands by engaging in plumbing without a license. There is nothing to indicate that these plumbers in any way completed the work, either in the name of plaintiff, or that they in any way purported to function under his license. I find, therefore, that the plumbers, who replaced plaintiff, did not make use of his plumbing license.

Plaintiff claimed that, under the oral agreement, he continued to work for defendant for two and a half (2½) months or ten (10) weeks. The only witness called by defendant, Mr. Gerald L. Fehlberg estimated the period to be more like eight (8) weeks. In this, plaintiff was corroborated by his plumbing foreman, and on all of the evidence I find the period, during which plaintiff worked for defendant, to be ten (10) weeks. It is admitted by both sides that for each week plaintiff was to receive Three Hundred Fifty ($350.00) Dollars. The plaintiff testified, however, that he received only a total of Seven Hundred ($700.00) Dollars, and that he is still unpaid for eight (8) weeks. Defendant offered no evidence to refute plaintiff's claim of non-payment, although it was fully within his power to do so. Moreover, when this was brought to the attention of counsel for defendant at closing argument, he admitted a failure of his case in this respect, indicating by way of argument, without supporting evidence, that only one week's pay was due the plaintiff.

■ Defendant's construction superintendent was in Court at all times, and it must be assumed that he could have produced either payrolls or cancelled checks evidencing payment. No such offer was made. I find, therefore, for the plaintiff that there is due him from defendant payment for eight (8) weeks at $350.00 per week or a total of Two Thousand Eight Hundred ($2,800.00) Dollars.

■ By way of counterclaim, defendant alleges that the work done by plaintiff was unsatisfactory, in that it was done in an unworkmanlike manner and not in accordance with plans and specifications. Defendant's only witness, Mr. Fehlberg testified that some pipelines had to be replaced, necessitating tearing up concrete, that the blueprints had been misread, and that some pipes were found not to be in their proper place—some that should have been encased in concrete were so misplaced that, when the concrete was poured, they were outside of the concrete, and that in some instances the piping used was not of the size required and specified. This witness was at best vague in his testimony,

and defendant offered nothing by way of corroboration. This very witness, the general superintendent, testified that he inspected plaintiff's work daily. Yet, it appears that he failed to observe these deficiencies until after plaintiff had been dismissed. Plaintiff and his foreman testified that at no time had their attention been called to any defects in their work, and Mr. Fehlberg testified only that on repeated occasions he stressed the importance of the job to plaintiff and asked that his work keep pace with the construction schedule. He did not testify that he had ever brought the defective work to plaintiff's attention. Mr. Fehlberg also testified that, so far as "sleeves" were concerned, he was the one who indicated to plaintiff's workmen where these should be placed. He stated further that he discovered that plaintiff's foreman could not read the blueprints, and that one of his men read and interpreted the blueprints to plaintiff's foreman. Nonetheless, plaintiff's foreman was allowed to remain on the job, apparently without any complaint to plaintiff. In attempting to fix the amount of the loss to his company, the witness was imprecise, indicating that he "would say" that the plumbers brought in from Wisconsin were paid "about $800.00" for the corrective work he claims they did, and, as to his assertion that plaintiff's dilatory operations caused the project to be completed one week later than scheduled, he could only say that his loss would be equal to his payroll for a week, which, he said, was around Two Thousand Five Hundred ($2,500.00) Dollars. I find, therefore, that the defendant has failed to sustain his counterclaim.

On the foregoing evidence, I conclude that the plaintiff is entitled to judgment against the defendant in the sum of Two Thousand Eight Hundred ($2,800.00) Dollars, with costs and reasonable attorney fees. I conclude also that the counterclaim of the defendant should be dismissed.